RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0039p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

SUSAN B. ANTHONY LIST,

    *Plaintiff-Appellee*,

*v.*

STEVEN DRIEHAUS,

    *Defendant-Appellant*.

No. 13-3238

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:10-cv-00720—Timothy S. Black, District Judge.

Argued: October 8, 2014

Decided and Filed: March 6, 2015

Before: BATCHELDER, GILMAN, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Paul M. De Marco, MARKOVITS, STOCK & DEMARCO, LLC, Cincinnati, Ohio, for Appellant. Michael A. Carvin, JONES DAY, Washington, D.C., for Appellee. **ON BRIEF:** Paul M. De Marco, MARKOVITS, STOCK & DEMARCO, LLC, Cincinnati, Ohio, Katherine Demarest DORSEY & WHITNEY, Anchorage, Alaska, for Appellant. Michael A. Carvin, Jacob M. Roth, JONES DAY, Washington, D.C., David R. Langdon, Joshua B. Bolinger, LANGDON LAW LLC, West Chester, Ohio, Robert A. Destro, Arlington, Virginia, for Appellee. Steven H. Aden, ALLIANCE DEFENDING FREEDOM, Washington, D.C., for Amici Curiae.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge. The counterclaim plaintiff, Steven Driehaus, appeals the district court's grant of summary judgment to counterclaim defendant Susan B. Anthony List (hereinafter "SBA List") on Driehaus's defamation claim. We affirm.

**I.**

On March 21, 2010, the United States House of Representatives voted on the Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 (2010) (hereinafter "PPACA"), and it passed by a vote of 219 to 212. Leading up to the vote, there had been significant debate over many aspects of the bill, including the possibility that it included taxpayer funding for abortion. Several anti-abortion advocates raised these concerns during that debate. In fact, then-congressman Steven Driehaus was one such advocate.

Driehaus was a first-term U.S. Representative from Ohio's 1st Congressional District and an anti-abortion Democrat. He became an outspoken advocate of the "no taxpayer funding for abortion in the PPACA" movement, gave numerous interviews, and appeared on national television to insist that he would not vote for the PPACA without inclusion of the Stupak-Pitts Amendment. The proposed Stupak-Pitts Amendment added language to the PPACA expressly forbidding the use of taxpayer funds "to pay for any abortion or to cover any part of the costs of any health plan that includes coverage of abortion" except in cases of rape, incest, or danger to the life of the mother. Cong. Rec. H12921 (Nov. 7, 2009).

The bill was brought to a vote on March 21, 2010, without the Stupak-Pitts Amendment and, despite his earlier statements, Driehaus voted *for* the PPACA anyway. Because the PPACA, as voted on and passed, contained no language to restrict taxpayer funding of abortions, several other congressmen denounced it as including taxpayer funding for abortion.

Three days after the vote, President Barack Obama issued Executive Order 13535 (Mar. 24, 2010), in which he explained that "it is necessary to establish an adequate enforcement

mechanism to ensure that [f]ederal funds are not used for abortion services, (except in cases of rape or incest, or when the life of the woman would be endangered), consistent with a longstanding [f]ederal statutory restriction that is commonly known as the Hyde Amendment." The parties dispute the meaning and effect of this Order,[1] but acknowledge that executive orders do not amend statutes. Debate continues as to whether the PPACA includes federal funding for abortion. But back in 2010, Driehaus was a first-term Congressman who had very publicly opposed the PPACA on his belief that it included taxpayer funding for abortion and then voted for it anyway.

SBA List is an anti-abortion public-advocacy organization that also opposed the PPACA based on its own belief that the PPACA included taxpayer funding for abortion. *See* http://www.sba-list.org/ legislation/pro-life (last visited Feb. 27, 2015) (announcing its "two main legislative priorities [as] ending all federal funding of abortion and ending taxpayer funding to Planned Parenthood"). SBA List was not a political candidate; specifically, SBA List was not Driehaus's political opponent, nor has Driehaus asserted that SBA List supported or was in any way affiliated with his particular political opponent for his Ohio 1st Congressional District seat.

When Driehaus campaigned for re-election in 2010, SBA List publicly criticized him, among other congressmen, for his vote on the PPACA on the basis that in doing so he had voted for "taxpayer-funded abortion." Four particular statements by SBA List are pertinent here.

(1) In an August 9, 2010, press release, SBA List said that Driehaus "voted for a health care bill that includes taxpayer-funded abortion."

(2) On September 28, 2010, SBA List purchased billboard space to say "Driehaus voted FOR taxpayer-funded abortion," but when Driehaus threatened the billboard company with a lawsuit, it refused to post the ad.

(3) In an October 7, 2010, print advertisement, SBA List said: "It is a fact that Steve Driehaus has voted for a bill that includes taxpayer funding of abortion."

(4) In a radio ad that began running on October 19, 2010, SBA List said: "Steve Driehaus voted for taxpayer funding of abortion when he cast his vote for the health care reform bill. . . . Driehaus voted for taxpayer funding of abortion."

---

[1] SBA List cites this as a concession that the PPACA includes federal taxpayer funding for abortion, or at least does not prohibit it. Driehaus argues that this Executive Order forbids federal abortion funding in the PPACA.

Given that Driehaus had campaigned as, and won his seat as, an anti-abortion candidate, this was a problem for his re-election prospects and it angered him. Despite his earlier concerns with the PPACA, Driehaus no longer viewed a vote for the PPACA as a vote for taxpayer-funded abortion. Therefore, he considered SBA List's statements about his vote to be untrue.

Just before the election, Driehaus filed a complaint with the Ohio Elections Commission (OEC), alleging that SBA List had violated Ohio Revised Code § 3517.21(B) ("Unfair Political Campaign Activities") by stating *falsely* that he had voted for "taxpayer-funded abortions." In an expedited hearing, a divided panel of the OEC found probable cause of a violation. Upon this finding of probable cause, the full OEC set a hearing date and discovery commenced.

In response, SBA List sued the OEC, the Ohio Secretary of State, and Driehaus in federal district court, claiming that Ohio Revised Code § 3517.21(B) was an unconstitutional restriction on free speech and seeking a declaratory judgment and an injunction. Driehaus counterclaimed, alleging defamation. The district court stayed SBA List's action until after the OEC proceedings. Driehaus and SBA List agreed to the postponement of the OEC hearing until after the election.[2]

Meanwhile, SBA List had moved the district court for summary judgment on Driehaus's state-law defamation counterclaim, arguing that the statements were opinion, they were not capable of defamatory meaning, or they were true and made without actual malice. The district court denied that motion for summary judgment and discovery continued in anticipation of trial.

Almost a year later, SBA List renewed its motion for summary judgment under a new theory. This time, the district court granted it, relying on *Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011), *United States v. Alvarez*, 567 U.S. --, 132 S. Ct. 2537 (2012), and numerous state law cases to conclude that, "as a matter of law, associating a political candidate with a mainstream political position, even if false, cannot constitute defamation." Driehaus appealed.

---

[2]Driehaus lost the election and withdrew his OEC complaint. The district court lifted the stay on SBA List's action and eventually dismissed it, concluding that SBA List did not present a sufficiently concrete injury for standing or ripeness. On appeal, we affirmed, *Susan B. Anthony List v. Driehaus*, 525 F. App'x. 415 (6th Cir. 2013), but the Supreme Court reversed and remanded, *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (June 16, 2014).

## II.

Driehaus places particular emphasis on the district court's First Amendment proclamation in arguing that the grant of summary judgment to SBA List was in error. SBA List counters that summary judgment was proper, even if for an alternative reason. Consequently, there are two aspects to this analysis: the categorical First Amendment proclamation by which the district court granted summary judgment in its second order, and the application of Ohio's state defamation law by which the district court denied summary judgment in its first order. The district court was wrong on both, but its grant of summary judgment was nonetheless correct.

### A. Categorical Proclamation

Driehaus argues that the district court's categorical First Amendment proclamation is incorrect and unsupportable. Just to recall, the district court announced that: "[A]s a matter of law, associating a political candidate with a mainstream political position, even if false, cannot constitute defamation." This rendered any further analysis unnecessary.

The district court relied on language from *Snyder v. Phelps*, 131 S. Ct. at 1215 (an opinion denying a grieving father's intentional-infliction-of-emotional-distress claim against protesters at his son's military funeral), and *United States v. Alvarez*, 132 S. Ct. at 2550 (an opinion declaring the Stolen Valor Act unconstitutional as content-based restriction on free speech), but neither of those is a defamation case and both opinions acknowledge defamation as an excepted First Amendment issue, *see Snyder*, 131 S. Ct. at 1215 n.3; *Alvarez*, 132 S. Ct. at 2544-46 (plurality), 2553-54 (Breyer, J., concurring), which severely limits the application of those opinions to the present case. The district court made no mention of this aspect of the opinions.

The district court essentially adopted the approach in Justice Goldberg's separate opinion in *New York Times Co. v. Sullivan*, 376 U.S. 254, 297-305 (1964) (Goldberg, J., joined by Douglas, J., concurring in the result). Justice Goldberg argued, albeit with further explanation and reasoning, that the First Amendment protects even malicious and false statements when those statements are directed at public officials concerning public matters or public conduct. *Id*. at 300. Implicit in the *Sullivan* majority's very different opinion is that the majority rejected

Justice Goldberg's alternative opinion. Therefore, Justice Goldberg's view is not the law. Moreover, we do not read *Snyder* and *Alvarez* as overturning *Sullivan* in such a way.

The district court's broad First Amendment proclamation is a misstatement of First Amendment defamation law and the grant of summary judgment based on that misstatement is clearly incorrect. But "we may affirm the district court's judgment on any basis supported by the record." *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 n.9 (6th Cir. 2013). Therefore, we consider SBA List's counter-argument that Driehaus cannot satisfy the elements of his state law defamation action, which would entitle SBA List to summary judgment on that basis.

### B. Ohio Defamation Analysis

Under Ohio law, "it is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Yeager v. Local Union 20*, 453 N.E.2d 666, 669 (Ohio 1983) (overruled on other grounds by *Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007) (recognizing false-light invasion of privacy)). Moreover, "[w]hether the evidence in the record supports a finding of actual malice is a question of law." *McKimm v. Ohio Elections Comm.*, 729 N.E.2d 364, 373 (Ohio 2000); *see also Dale v. Ohio Civil Service Emp. Ass'n*, 567 N.E.2d 253, 255 (Ohio 1991) ("Where the 'actual malice' standard is applicable, . . . appellate courts are required to independently review the evidence."). Therefore, the question is properly before us.

"To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012). Failure to establish any one of these elements is fatal to the claim. We need consider only the first and fifth elements.

#### *1. Falsity*

Ohio courts "ha[ve] defined a false statement as a statement that sets forth matters which are not true or statements without grounds in truth or fact. A statement is not a 'false statement' if, even though it is misleading and fails to disclose all relevant facts, the statement has some

truth in it. Moreover, a statement that is subject to different interpretations is not 'false.'" *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm'n*, 822 N.E.2d 424, 430 (Ohio App. 2004) (internal citations, editorial marks, and certain quotation marks omitted); *see also Nat'l Medic. Serv. Corp. v. E.W. Scripps Co.*, 573 N.E.2d 1148, 1150 (Ohio App. 1989) (quoting Prosser, Law of Torts (4th Ed. 1971) 798-99 ("It is sufficient [in defending a defamation action] to show that the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation.")). We must therefore consider whether SBA List's statements "ha[ve] some truth," *Serv. Emp. Internat'l*, 822 N.E.2d at 430, are "subject to different interpretations," *id.*, or are "substantially true," *Nat'l Medic. Serv.*, 573 N.E.2d at 1150, such that the "gist" or "sting" of the statement is substantially true, *id*. This is a low threshold.

Driehaus argues that the statements were false because the PPACA contains no "appropriation" for funding elective abortion anywhere in its text and therefore does not "provide" federal funding for abortion. SBA List, on the other hand, points out that in its actual statements it used the word "includes" and never used the word "provides" or "appropriation." Based solely on Driehaus's construction of his claim and SBA List's response, the true substance of these statements appears to be subject to differing interpretations.

Moreover, given the debate prior to passage of the PPACA as to whether it includes taxpayer funding for abortion, the gist or sting of the statements appears to have at least some truth, to be substantially true, or to be subject to differing interpretations. Driehaus vocally opposed the PPACA because of his concerns about federal funding for abortions but he then voted for it anyway despite the absence of his desired language (the Stupak-Pitts Amendment) in the final version. The Executive Order adds language, but is not part of the PPACA and does not alter the statutory text. In fact, debate continues over the meaning and effect of the PPACA.

Due to the low threshold we have here for a finding of "truth," we need not resolve this debate at a higher level of specificity. For SBA List to overcome Driehaus's defamation claim, it is enough that the statements had some truth, were substantially true, or were subject to differing interpretations. Driehaus's own change of position demonstrates that they were.

### 2. Fault

For a public official to prove fault, he must satisfy the actual-malice standard; he must prove that the defendant made the statement "with knowledge that it was false or with reckless disregard [for] whether it was false or not." *Dupler v. Mansfield Journal Co.*, 413 N.E.2d 1187, 1190 (Ohio 1980). "Actual malice may not be inferred from evidence of personal spite[,] ill-will[,] or intention to injure on the part of the [defendant]. Rather, the focus of inquiry is on [the] defendant's attitude toward the truth or falsity of the publication. . . . There must be a showing that false statements were made with a high degree of awareness of their probable falsity. . . [and] sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* at 1190-91 (quotation marks and citations omitted).

Even if Driehaus could prove that the PPACA does not include any taxpayer funding of abortion, thus making SBA List's statements actually or technically false, we can find no evidence to support Driehaus's claim that SBA List "knew" the statements were false or "entertained serious doubts as to their truth." Rather, all of the evidence supports a finding that SBA List did then, and does now, believe emphatically that the statements are true: that the PPACA includes taxpayer funding for abortions. Moreover, given that SBA List's mission is "ending all federal funding of abortion," SBA List would have no cause to criticize or campaign against either the PPACA or Driehaus if it did not believe that the PPACA included taxpayer funded abortions. Rather, one would expect SBA List to support an anti-abortion candidate, particularly one who had been as outspoken as Driehaus had been in opposing federal taxpayer funding of abortion.

Driehaus cannot show any basis by which we could find actual malice. Consequently, SBA List is entitled to summary judgment on this defamation claim.

### III.

For all of the foregoing reasons, we AFFIRM the district court's grant of summary judgment, albeit on different grounds from those relied upon by the district court.